Mayor, please record. Good morning, your honors, Eric Guzman on behalf of Mrs. Zamudio. The district court in this case committed two separate errors. First was the denial of the motion to dismiss the indictment based on a collateral attack of the underlined deportation, and second was the jury instruction regarding statute of limitations. I'd like to begin with the motion to dismiss. To prevail on such a motion, a defendant must show three things. One, that the underlying deportation was fundamentally unfair. Second, that the defendant exhausted administrative remedies. And third, that he was deprived of judicial review. Before I get into the showings, I just want to point out one important background information regarding the deportation. When the government sought to deport Mrs. Zamudio in this case, it filed what's called a notice to appear, which is essentially the charging document for removal hearings. That document alleged two separate charges of removability based on two separate criminal convictions. The first charge was that, the first allegation was that Mrs. Zamudio had sustained a 1995 conviction for California Penal Code 207, received a three-year sentence, which they claim made him removable because it was an Mr. Zamudio had received a controlled substance conviction in 1999, which rendered him removable for having sustained a conviction of controlled substance violation as defined by the federal schedule in 21 U.S.C. Section 802. Now, to prevail on this motion, I laid out the three elements. And the first element is that the underlined removal hearing was fundamentally unfair. And this court has broken that up into two separate sub-requirements. First, that there was a due process violation, and second, that it was prejudicial. The due process violation in this case was that the immigration judge did not inform Mr. Zamudio of his eligibility to apply for relief, a form of discretionary relief. In this case, he was eligible to apply for a form of relief known as withholding of removal. It's often commonly referred to as 212C relief. It's clear that I.J. did not inform him of that relief. To the contrary, he told him he was eligible. So that's the error. The prejudice is that, to show prejudice, a defendant needs to demonstrate that he would have had a, quote, plausible claim of relief. Not necessarily that he would have received it, but asking more than something technically possible, just that it would be in the realm of plausibility. And you can show that in this case. But that would not end the inquiry, because that form of relief would excuse only the first charge of removability, that being the 1995 conviction. He would still have to face the second charge of removability based on the controlled substance offense. Had Mr. Zamudio gone forward on a contested hearing in deportation proceedings, it's possible that he would have prevailed at that hearing and not been deported, because the evidence that the government had in their file at the time was insufficient to satisfy the Taylor analysis, meaning that the statute for which Mr. Zamudio was convicted is categorically overbroad. And the only way you can be removed based on the categorically overbroad statute is if there's some of what we refer to as shepherd documents that would bring his actual conviction within the federal parameters for that charge of removability. And in this case, there are no such shepherd documents. And had competent, had Mr. Zamudio received competent counsel, the government would not have been able to sustain the burden based on the record we have before us, and he would not have been deported. But, counsel, you agree, though, that the offense, the second offense, you have the law, the California state methamphetamine offense, is a qualifying offense that would require your client to be removed, assuming that the government had adequate proof of it. It is possible under the modified categorical approach to get there. That is true. So you're not arguing in this case that a possession-type crime would not qualify as one that requires removability. You're just saying factually the government hasn't proven that that's, in fact, what he was convicted of. I think it would be more nuanced than that. It's not just always a matter of proof. It could be what he actually pled guilty to. So under the, under discounts, you're only, the judge is only allowed to look to what you were actually convicted of. So if he pled guilty just to that charge in general, not, without specifying a controlled substance, that would take him outside the realm of removability, or if the government didn't have the evidence. So just one added layer. Now I'd like to move on to the second issue, that being the statute of limitations. There's a circuit split right now regarding whether or not a constructive discovery doctrine can apply for a founding offense. Now there are policy reasons to go each way, but I think the policy reasons in favor of adopting a constructive discovery instruction far outweigh those against it. I guess at the broadest level, statute of limitations exist to protect criminal defendants from having to defend themselves on a crime that might have occurred a long time ago after evidence has disappeared and memories have faded. Secondly, as some commentators have pointed out, a statute of limitations, a strong, robust statute of limitations encourages more diligent law enforcement. Well, that's nice, but it seems to me that you've got an initial problem of how he first came in. When an individual uses, falsely uses documents to come in, he's already committed a fraud on the government. Why wouldn't that be important before we give him all of these benefits when the individual has really brought it upon himself because he fraudulently came into the country and knew it? Well, I would like to answer your question in two parts, Your Honor. The first part would be I believe a judge can still give the instruction, the instruction adopted by the Second and Third Circuits, and then leave it for the jury to decide whether or not the exercise of due diligence would have discovered the fraud. Wait a minute. Whether due diligence would have discovered the fraud when? At the time that he entered, at the time he crossed the border. So the decision you want to have us make is with tens of thousands of people coming to a border, that they didn't stop, and then every person that doesn't have a passport, we would stop and check their documents? Well, I believe that that is what happens today, and I think that is a good policy. And to the extent a standard would increase inspection at the border Wait a minute. You say that's the policy today. You mean every green card that is shown up at the border is run through the computer, and where in the record does it show that? That's not in the record. Pardon? That's not in the record, Your Honor. And, Counsel, what your client did here by his own admission was he used an expired card or an invalid card to gain entry into the United States, correct? It should have been forfeited, correct? Right. He shouldn't have had it in the first place. Yes. But he still had it for whatever reason was unclear from the record. But he used that expired card or invalid card, is maybe a better term to use here, to get in. In your brief, I think it was at page 50 of your brief, you say, Defendants who use false names or counterfeit identification with inaccurate information, i.e., different birthday, A number, et cetera, would not be covered by this standard. Correct. And you're saying the difference in this case is because even though the card was invalid, if the officer checking the ID card had done further inquiry, he would have determined that this person was not in the country legally. Correct. In a lot of the other circuit cases where the convictions are affirmed, those defendants either use a false name or they give an alias or So I think this case is different because they actively conceal their identity by misrepresenting who they are. Also, one point I think is very significant is that Mr. Zamudio entered through a port of entry. And in the third circuit case of De Santillo, the third circuit really latched onto that. They said this isn't surreptitious in that it's done in stealth or over a fence or in a compartment. This is someone who went through an official INS port of entry. So I think the holding in this case can be very limited. But when someone presents themselves to a border checkpoint with all the accurate information in that it was his accurate name, birthdate, A number, and allows the border inspectors with minimal effort to discover that he lacks permission to enter the country What was the matter with the card? Was it expired? Well, he had been deported about three months prior. So there was nothing, I guess, false about the card other than the implicit claim that it conferred upon him the right to enter the country. But the card had not been altered by anybody. Okay. Have any of our sister circuits come to the conclusion that if you use an invalid knowingly use an invalid document that you can't get the starting of the statute of limitations by that moment? No. The closest, Your Honor, was the first circuit case of United States v. De Leon where it was an accurate green card. However, he had been deported under a false name. So he went through deportation proceedings under an alias. And I believe that case was 1991. And at that point, I guess there was a delay to update the border checkpoint databases. So that case is close to what Your Honor is asking, but different in that there was no record of his deportation under his real name because he misrepresented his identity during removal proceedings. But no sister circuit has held, if I understand you, aside from whether or not the person checks, that if a person uses an invalid card, they're ineligible for the waiver of the statute of limitations. I don't believe so, Your Honor. However, the Fourth and Seventh Circuits have expressly rejected any discovery, constructed discovery. I understand. We're across the board as far as the circuits are concerned. Okay. So in those two circuits, you wouldn't get it. I think the closest factual scenario other than De Leon would be De Santillo where the visa he used at the port of entry was invalid because it was based on misrepresentations he made to the consulate. It was nevertheless accurate in that it revealed all his correct biographical data. I'd like to reserve the remainder of my time for rebuttal, if I may. Thank you, Mr. Guzman. Thank you. Ms. Gray. May it please the Court, good morning. My name is Lori Gray. I represent the United States. The defendant raised three issues in his brief and argues two today. None merit reversing his conviction, and I'll address those in the order that he brought them up to the Court. First, in challenging his deportation order, the underlying deportation order, the defendant has failed to show, as is his burden, a due process violation and prejudice. First, there was no due process violation. He had two prior deportable violations. One, the kidnapping conviction in 1994, which defendant concedes is an aggravated felony based on the 1996 amendments. That's in his brief at Note 2. The second one was the 2000 felony possession of methamphetamine, which this Court has held as a deportable controlled substances offense as long as properly proven using the modified categorical approach. And here, using that approach, it shows that he was in fact convicted of possession with methamphetamine. I would direct the Court to excerpt of record 156 and 157. Here, at 157, the felony complaint charged in Count 1, the unlawful possession of meth in violation of 11-377A, and in Count 2, charged the unlawful possession of marijuana, a misdemeanor, at 11-357B. Now, the sentencing order, which is a judicially cognizable document and was presented, is at ER 156. And at the top of that document, it says charges. Then it has 1F-11-377AHS, which would be the felony charge. Then it says 2M-11-357BHS, which would be the misdemeanor charge. The second page of that document, ER 157, about two-thirds of the way down, shows that Count 2 was dismissed. So the misdemeanor count was dismissed. Defendant pleaded guilty to and was found guilty of the controlled substances defense, which is a deportable crime. And this is different from Ruiz-Vidal, which he cites in his brief, because in that case, the charging document and the sentencing abstract did not mesh. The charging document charged particular offenses and drugs, and defendant pled to something else. And so it was unclear from the record. Here, we have proven by clear and convincing evidence that defendant pleaded guilty to possession of methamphetamine. The upshot of all this is detailed in the district court's order at ER 35-42, is that even if defendant qualified for relief under Section 212C, as he seems to be, he would have been ineligible for cancellation of removal for the possession conviction, because that drug charge trumps. So he has failed to prove the due process violation. The record also shows that he failed to exhaust his administrative remedies. The hearing was on November 1, 2000. His attorney reserved the right to appeal. He also makes a claim that the attorney was ineffective, but the record shows otherwise, Your Honor. If you take a look at SCR 183, it shows that when the attorney asked that the court read to him the notice to appear, the attorney then answers a series of questions that shows his familiarity with the defendant's family, his background, his residence status, his criminal history, and, in fact, properly stated the law. That attorney reserved the right to appeal. Defendant fired that attorney on the 10th of November. Then on the 20th of November, he filed a written waiver of appeal. So, in fact, the record shows that he failed to exhaust his administrative remedies. But, counsel, you would agree that if we agree with you that the two felonies in this case were qualifying, we don't need to get into the performance of counsel. That's correct, Your Honor. And you also don't need to get into the prejudice, which on this record, Your Honor, is not being granted. The I.J. would not have granted the relief he seeks. So without any further questions on that issue, I'll go to the district court, the instruction that was given. The record shows that the court permitted defendant to present evidence to support his statute of limitations defense. The ex-wife testified. The court properly instructed the jury on the statute of limitations, said that the statute of limitations in this case is five years. The defendant argued his theory of the case, and that's at SCR 144. He says the judge is going to tell you that the statute of limitations means the government has to bring a case within a certain period. Five years in this case. Five years that simply didn't happen. And I'd like to focus on what defendant was charged with under 8 U.S.C. 1326. That charges three distinct defenses, entry, attempted entry, and found in. And in this case, as Your Honors are well aware, the government charged the defendant with being found in. As this court said in Rulis-Arguin, the crime of being found in the United States is completed when the alien is discovered and identified by the immigration authorities. And that case relied on this court's decision in Hernandez, which found actual knowledge based on the government interviewing the defendant in jail and determining he was illegal. And it cited, too, the two-pronged constructive notice, which was that the government discovered the alien and, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the presence. Because there was no case on point in this circuit, the district court judge, to your point, Judge Walz, used the second circuit case in Ace Vida. And Ace Vida was remarkably similar. In that case, an alien had been deported for an aggravated felony. He came back through the Miami airport and showed, in 1991, his green card, which was invalid because he had lost his status. He was waved through, and seven years later, the government found him. And the court said that did not trigger the statute of limitations when he came in because, while it wasn't a surreptitious border crossing, it was presentation of a specious document. And specifically, Ace Vida said, this is at page 355 of that opinion, because a green card is an accepted means by which an alien may demonstrate the legality of his admission, a deportee's presentation of an invalid green card does not place the INS on notice that his presence in the United States is legal, even if the alien uses his real name. The counsel argues that the border patrol, or whatever they were called in those days, invalidly did their job because they should have run the green card through the computer program and make a determination. That is, each time a green card comes through, you can't use that green card, even though it's improperly presented. You have to run it through the computer, or the statute of limitation begins at that point. Would you respond to that argument, please? Well, I will, Your Honor. First of all, what we're looking at is when he came in, which was in 2001, according to his ex-wife's testimony, not the standards by today. And what we have at best in this case, Your Honor, at best, is that defendant presented an invalid green card. That green card, by the way, was never produced or introduced at evidence. It came from the testimony of the ex-wife, who said she presented it. Of course, we have the testimony contradicting from the agent, who talked about had done a thorough search of the INS records. There was absolutely no contact with defendant. Now, defendant argues that the government should have done something. And in Ace Vida, they did not reach the issue of due diligence, because there was a suggestion that there was no suggestion that they had the capability. That's exactly the same here. In this case, defendant in his brief overstates Agent D. Bishop's testimony. First of all, there was no evidence put in about what the practice was at that time at the border. As a matter of fact, on defendant's cross-examination, which is an excerpt of Record 198, he starts by saying, now, on direct examination, Officer Bishop, you testified you've worked for immigration services for 20 years. Yes. How many did you spend working at a port of entry that borders Mexico on a U.S.-Mexico port of entry? None. How many of those 20 years did you spend working at some port of entry where you can drive into the United States? I never worked in a land border port of entry. Have you received any training on how to work at the border? No. So after completely establishing that this witness has no knowledge about what's going on at the border, at excerpt of Record 199, defense counsel says, all right. And when someone enters the country at a port of entry, is a green card something that you could present to an immigration inspector to try to get admitted? Yes. Then goes on and says, all right, and if an officer wanted to run that card, how could they do that? And it ends by saying, do they have the ability to enter? All of this, Your Honors, is mushy language. It doesn't show what happened at the border, what the requirements were, what the diligence typical of law enforcement authorities was at that time. Instead, what the evidence is that proved beyond a reasonable doubt every element of this offense is that defendant was deported on November 20th, that a thorough search of all INS records showed that there was no permission to reenter form filed, there was no contact, until defendant was found in the Sonoma County Jail on April 23rd, 2012, and he was indicted three months later on July 5th, 2012. What is the government's position with respect to when there may be constructive knowledge of a defendant's presence in the United States? Well, Your Honor, to take the second prong of that would have to be diligence typical of law enforcement. So if it is shown that every single person's green card is run at the border and I come through and I win the lottery and I'm a legal alien and they don't run my green card, I think there you could say, government, statute of limitations started running when you didn't do your due diligence. If a person is, there is authority, is there not, that the person who is arrested in custody and in the, and there is no investigation of the, whether his legal status, that that may be constructive knowledge. Then again, that would be a situation where if normally, I think there was a case where the FBI failed to run the fingerprints and it was months and years down the road, then you would have a situation of what is typical due diligence. But we don't have any of that in this case. So, for example, I think it's the 11th Circuit and Scott in that case where I believe they had all the information and it wasn't conveyed to another government agency. So you would be comfortable in that situation saying the statute would run, I understand that's not presented in the case here, but just to understand the government's argument. In a case like that where someone is in the country in prison, they say, yep, I'm here illegally and for some reason no action is taken. That you would be more comfortable saying for constructive notice purposes. I would, Your Honor. I have to confess I'm unfamiliar with Scott. But on the facts as you present them, I would. And I would like just for a moment to talk about De Santillo, which is not the same, which the defendant relies on. In that case from the get-go, there was a question about whether he had properly been notified. He was given what was called a Form I-99, a notice of revocation that did not mention deportation, whereas here, defendant, there's absolutely no dispute that he was given the warning to alien ordered removed or deported, big as life in the heading. That's SCR-192. And so in that case, De Santillo obtained a visa from the United States consul in Italy. And he came into the country through a port. He filed tax returns. He filed notice of his address. And the court there simply said that that cannot be, that the statute did not run. As a matter of fact, the practicalities are that aliens cannot commit a fraud and get away with it. In the Lennon case, which defendant filed in his Sunday 28-J letter, the court agreed that the passage of time does not give rise to a de facto amnesty that legalizes an unlawful alien's presence. This shouldn't be a cat and mouse game. In this case, the facts show that the government proved each element and the defendant was properly found and convicted. If there are any other questions, I'm happy to address them. I wondered whether there was any findings made as to whether or not he ever appeared at the border or whether he snuck in under some other way. That is to say, there's no record that he ever came through the border. He did have his wife testify. I take it he did not testify. He did not testify. So what the jury had was conflicting testimony. They had the testimony of the wife that, yes, we came in. We came in Memorial Day weekend. I presented my identification. I handed over his identification. And you had the testimony of the agent that said, I reviewed all the records and there isn't anything. The jury was properly instructed that an invalid travel document does not provide government notice. And the defendant has cited no case opposite to that. And the jury did ask for a definition of what is an invalid travel document. And the court told the jury, as agreed to by the defendant at SCR 170, that invalid means not legally sufficient, and then told them at SCR 170, 172, that it was their duty to go back to the record and make its determination. And the only evidence in the record, as you pointed out, Judge Wallace, was the testimony from the wife who admitted, I knew it was an invalid document. We knew he couldn't come back in the country. Who has the burden of proof? The government has the burden of proving each element of defense, and we certainly did in this case. The defendant, any deficiencies in the record, with him going to what is the lawful or what is the usual course of practice at the border, fall to his detriment because the government put in its evidence and the jury found, and as this Court knows, reads that evidence in the light most favorable to the government, found that each element had been met. Thank you very much, counsel. Mr. Guzman, I think you have about three minutes. 317, the clock says. I just have a moment. Sure. A couple of things I want to clarify in light of Ms. Gray's argument. First, there was a due process violation. The law in this circuit is clear that if someone is eligible for a form of discretionary relief and the immigration judge fails to advise them, that's a due process violation. What was that discussion that was held over the telephone between your client's attorney and the immigration judge? Was that something that was on a speakerphone or does the record show how that worked? What happened was on the day of his removal hearing, prior counsel was not present, nor had he arranged a telephonic conference, and the immigration judge called prior counsel at his office, said the hearing is going forward. And during that discussion, prior counsel admits, amongst other things, that he had never seen the notice to appear, never read the charging document. Yeah, my question is a little different. Was it on a speakerphone or was it just between a handheld set between the judge and the lawyer? I have no idea, Your Honor. That's not in the record. Okay. So we don't know whether or not everybody in the court could hear. Apparently, he was aware that he could appeal by what I read in the briefs. Well, there's a preprinted form that Mr. Zamudio signed, I guess waiving his right to appeal. I don't think it would be knowing an intelligent waiver. That was later on. Correct. But at the time of the hearing, the attorney indicated that he knew he could appeal. Yeah, the prior counsel reserved appeal. His family then fired that attorney based on that. And then he waived his right to appeal at that time? Correct. Okay. I understand. Thank you. All right. And, I mean, his performance, I don't think you can make a credible defense of this attorney's performance that never once met with the client, did not attend the hearing. It basically pled him guilty without reviewing the charging documents. And his conversation on the phone betrays any knowledge of immigration law. He made at least one mistake where he claimed that he's ineligible for relief because of a controlled substance offense. And the immigration judge, to his credit, corrected him and said, no, that won't do it, but the ag felony will. And that was incorrect also. Also, on September 4th of this year, this court decided a case, I believe it was United States v. Lopez-Chavez in my first 28-J letter where it was held that if there is ineffective assistance of counsel, that will excuse exhaustion or the deprivation of judicial review requirement for a collateral attack motion. Also, the Acevedo case of the Government of the Second Circuit is different for a couple reasons. First of all, the way the issue of statute of limitations arose in that case was that the defendant alleged that his prior counsel was ineffective for failing to pursue that defense at trial. And the Second Circuit said, well, it wasn't ineffective assistance because you wouldn't have won on that claim anyway because we have evidence that in 1991 you couldn't scan a passport at an airport. That's different here. In this case, the government's case agent said that he believed that computers were present at all the border checkpoints at the time of this entry. And I think it's a mischaracterization to say that there was inconsistent testimony. The testimony by Mr. Zamudio's ex-wife said they brought him through the border and no one ran the green card. Judge Alsup later said that he found her to be a good witness for the defense and that she seemed credible. When Mr. Zamudio was originally arrested by immigration authorities well before this trial started, he told the immigration inspector that he returned in 2001 by car, which corroborates the wife's testimony. And the fact that Agent DeBishop said he ran the database and found no proof of entry, all that means is there was no text entry because there was no scan of the green card which is completely consistent with the ex-wife's testimony. All right, Mr. Guzman, you need to wrap up here. Do you have anything else you want to add? No, thank you. All right. Thank you very much, Mr. Guzman. That matter is submitted.
judges: WALLACE, SCHROEDER, OWENS